(36 South. 759.)

No. 15,029.

MORET v. NEW ORLEANS RYS. CO.

(June 6, 1904.)

APPEAL—REVIEW—QUESTIONS OF FACT.

1. On questions of fact involving the credibility of witnesses, the verdict of the jury will not be disturbed unless manifestly erroneous.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; John St. Paul, Judge.

Action by Marie Ernestine Moret against the New Orleans Railways Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Denègre, Blair & Denègre and Victor Leovy, for appellant. Fenner, Henderson & Fenner, for appellee.

LAND, J. Plaintiff sued for damages for personal injuries alleged to have been occasioned by the starting of a street car while she was in the act of alighting.

The answer admitted that plaintiff boarded the car and paid her fare as alleged, but averred that if the injuries complained of were suffered, which was denied, the same were not due to or caused by any negligence of the defendant or its employés.

The cause was tried before a jury, which found a verdict in favor of the plaintiff for the sum of $1,500. From a judgment pursuant to said verdict, defendant has appealed.

This case involves no question of law, and but one disputed issue of fact, to wit, whether or not the car was started before the plaintiff completed her descent from the step to the street.

Plaintiff is a stout, elderly lady, and on the occasion in question was accompanied by her granddaughter, Ernestine, aged nine years.

Plaintiff testified in part as follows: "I was getting out backwards, and my left foot was on the ground, and I caught the bar, this way (illustrating), because I am heavy and old, and the conductor did not give me time to put my right foot down, when he had the bell and jerked it, and I didn't have time to catch myself, and I fell on my left side. * * * As I took my right foot down he pulled the strap, and the car jerked me."

The attending physician testified that he found a fracture of the hip bone and considerable contusions on the left hip, and back,

and left side, the result, in his opinion, of a violent fall or injury.

The testimony of Ernestine Francis, aged nine years, corroborates the statements of her grandmother as to the cause of the accident.

Borne, witness for plaintiff, testified that he was on the car; did not see how the accident occurred; the car started, and went 10 or 15 feet and stopped, and witness looked out of the window and saw the lady lying on the ground.

The conductor testified that he helped the plaintiff down, and that she got clear off the car before he gave the signal to start; that he noticed that she fell, and he stopped the car within 8 or 10 feet; that he went to the lady's assistance, and she said that her leg was hurt, and that the car step was too high, whereupon the conductor replied that the car step had nothing to do with it. In another part of his testimony the conductor stated that plaintiff had gotten both feet on the ground and released her arm when he rang the bell to go ahead; that he saw "her weakening up" or "tilting over," and tried to stop the car to get there before she fell, but it was too late.

Miss Southon testified that she saw the conductor helping plaintiff off the step, very carefully as she thought, and the car started off and went a little distance, when the conductor rang the bell very violently, and jumped off the car and ran back; that witness then stood up to see what was the matter, and saw the old lady on the ground. This witness "supposed" that plaintiff was off the car, but from her position in the car could not see plaintiff's feet on the ground; she was, however, certain that the conductor was helping plaintiff down, and that one foot was off of the step.

Charlton, another witness for defendant, testified that he was a passenger on the car, and that, as far as he could see, the plain-

tiff was on the ground when the car started. He did not see the conductor take her arm, but supposed he did, on account of the way he took the bell; he could not see the plaintiff's feet, but she was apparently clear of the car.

Mary Gorham, colored, testified that plaintiff was clear of the car, with both feet on the ground, and fell as the car pulled away from her. This witness was sitting with her face fronting the river, and in her position could not have seen plaintiff descend to the ground. The same may be said of the other passengers.

The conductor does not state that plaintiff turned or moved before falling, and the inference from his testimony is that she sank where she stood, about 18 inches from the track.

He stated that she was lying on the crossing "with her face downtown." None of defendant's witnesses state that plaintiff changed her position before falling. Mary Gorham testified that, "as the car pulled away from the lady, she fell." She states that plaintiff's face was "downtown."

Hottinger, witness for plaintiff, testified that before she was picked up she was lying on her left side near the iron bridge, "with her head towards Third street." Plaintiff's testimony is that she fell on her left side, with her head towards Third street and her face towards Second street, and her feet towards the river, in a slanting position, just as the car jerked her. Ernestine Francis testified that, after her grandmother fell, her head pointed uptown towards Third street.

There seems to be a concurrence in the evidence that plaintiff's fall and the starting of the car were practically simultaneous.

There is a conflict of evidence as to the physical fact of the position of plaintiff immediately after the accident. On this issue the plaintiff and her granddaughter are cor-

roborated by Hottinger, and if plaintiff, immediately before the accident, was facing the step, with her left side towards "downtown," the circumstance that she fell on her left side, with her back to the car and her head towards "uptown," can be accounted for on either the hypothesis that she was jerked around by the forward movement of the car, or had turned around of her own volition so as to present her back to the track.

It may be possible that plaintiff's left hip was broken by her simply stepping from the car, notwithstanding she had hold of the handle bar; it may be possible that she stood upright on the broken limb for a time sufficient for the starting of the car; and it may be possible that she turned completely around and moved several feet before she fell; but the probabilities are all in favor of the hypothesis that she was turned round by the movement of the car, and that the limb was broken and the contusions were made by the fall. This is plaintiff's testimony, supported by that of her granddaughter, and corroborated in a material point by Hottinger. We do not think that the testimony of the passengers, who had no motive to be on the lookout, and who had limited opportunities of observation, corroborates the testimony of the conductor to a sufficient extent to nullify the prima facie case made out by plaintiff and her witnesses. The testimony is irreconcilable on several points, and the decision of the case depends on the credit to be given to the witnesses. This was a question for the jury to determine. The jury believed the testimony of plaintiff and her witnesses. We are not prepared to say that the verdict was manifestly or clearly erroneous.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be affirmed.