No. 5399.

MARY JOHNS VS. HENRY J. BRINKER.

|   |   |
|---|---|
| 30 | 241 |
| 107 | 235 |
| 30 | 241 |
| 116 | 1112 |
| 30 | 241 |
| e124 | 598 |

The commander of a steamboat has a right to use whatever reasonable and lawful force may be necessary to maintain a proper police of his vessel, and discipline among his employees.

Where an employee on board of a steamboat, by her own insolence, insubordination, and threats of personal violence, provokes the captain of the boat into an assault with his hands, resulting in but a trifling injury to her, she will not be entitled to recover in damages.

Where the issue involved in the verdict of a jury, and judgment of the lower court, is damages for an alleged assault and battery, this court will not disturb such verdict, and judgment, where they do not clearly appear to be unjust.

APPEAL from the Sixth District Court, parish of Orleans. *Saucier*, J.

*Merrick, Race & Foster* for plaintiff and appellant.

*James D. Coleman* and *H. E. Upton* for defendant.

The opinion of the court was delivered by

EGAN, J. This is an action to recover damages for an alleged malicious, wanton, and inhuman assaulting and beating the plaintiff, and for defaming and slandering her. The particulars of the alleged defamation are, however, not charged, and that branch of the case seems to have been practically abandoned. The argument of counsel, that the introduction in the trial of this cause of evidence of witnesses tending to affect the reputation of the plaintiff can form an element of damage and a basis of recovery in the present case, is wholly untenable. The case must be tried upon the state of facts alleged upon and existing at its inception. As to this we find no evidence in the record to support the charge of defamation. We have, therefore, to deal only with the alleged assault and battery.

The plaintiff was chambermaid upon the steamer Maria Louise, of which the defendant was captain. The occurrence out of which this suit arose took place while the boat was lying at the port of Shreveport, on Red River, in April, 1872, on her return trip from Jefferson, Texas, with a full list of passengers, among whom were a number of ladies. Just as the passengers were about sitting down to dinner in the cabin, it was reported to the captain that the plaintiff was causing some disturbance, to the annoyance of the lady passengers, growing immediately out of a quarrel between her and the colored nurse of the captain's children, between whom and the plaintiff it appears no good feeling existed. It is also charged by some of the witnesses, and denied by others, that the plaintiff was at the time intoxicated, or at least excited by liquor; we do not, however, consider this fact very material either way, and may disregard it in view of the

other facts proved. The captain on receiving this information went back to the laundry, back of the ladies' cabin, and spoke to the plaintiff, it seems with a view to putting an end to the disturbance and to the consequent annoyance of the passengers. This he had a perfect right,. and it was his duty to do in policing his own boat. The preponderating evidence of the only witnesses who heard and saw what passed between them at that time seems to have satisfied the jury and the judge below that instead of yielding to the legitimate authority of the commanding officer, to whose orders and direction it was necessary, and she by accepting employment on the boat had consented, to submit herself,. the plaintiff was insolent and insubordinate, and attempted or threatened to strike the captain with a large lump of coal ; and that he thereupon either knocked or kicked the coal out of her hands and at the same time slapped her forcibly in the face, causing her nose to bleed and either contusion or fracture of the nasal bone, about which the testimony of two physicians on the record is not accordant, though both agree that there was not even an abrasion of the skin. The plaintiff then very naturally rushed out of the laundry and along the guards in the direction of the forward cabin or gangway, and the captain as naturally, to avoid disturbing the passengers and creating a commotion, followed her and forced her back into the laundry, and told her to stay there. Some of the witnesses say he struck her with his fist on the back of the head while on the guards, and others say he did not; at all events it does not appear from the testimony of her own witnesses that any injury resulted from the blows, if given. They could certainly not have been delivered with much force, or under the circumstances she would have been knocked down, and Dr. Kennedy, whom she consulted immediately on her return to New Orleans, says he neither heard of nor saw any other evidence of injury except to the nose. The plaintiff was then paid off and discharged, and left the boat the same day ; and after remaining three or four days in Shreveport returned to New Orleans by way of Monroe and Vicksburg, accompanied by a lawyer, who it would appear had fired her with the ambition and belief that she could, under the then existing circumstances and state of public opinion in the country, realize a fortune in the way of damages out of the defendant. Acting under such advice she first had the defendant arrested and carried before a U. S. Commissioner at Shreveport, and afterward at New Orleans, and also attempted to have him indicted by the grand jury in the U. S. District Court for La. but without success. She also instituted this suit to recover ten thousand dollars damages for her wrongs and injuries, and two hundred and thirty dollars and 50-100 for her traveling expenses and doctor's bills.

The traveling expenses were simply a consequence of her discharge

Johns vs. Brinker.

from employment, and as we agree with the jury and court below that under the circumstances the defendant had a right to discharge her, this is no element of recovery in the case. The doctor's bill amounted to ten dollars for a single visit, and the professional services of Dr. Kennedy after her return to New Orleans.

The only other element of damage then is that growing out of the assault and battery, with the exception of such professional advice and services, if such they were, as were afforded her by the attorney who accompanied her to New Orleans, and to whose advice it would appear the plaintiff is indebted for this protracted and exaggerated litigation. Of them she says herself that she could not see or did not think this attorney did her any good ; she could see nothing he did for her, and she therefore discharged him after paying him three hundred and ninety dollars, and employed the counsel who has since conducted this litigation. There is no evidence in the record to countervail the impressions of the plaintiff herself in regard to the character and value of the services in question. On the contrary, the record would rather make the impression that she had been badly advised and encouraged to embark in expensive and speculative litigation to no profit. The amounts paid her present attorneys for the prosecution of this suit are not recoverable in it even if so large a claim were established by other testimony than that of the plaintiff alone, as it is not. There is no evidence of malice or of wantonness in the defendant in the assault and battery complained of. The plaintiff herself swears that she and the defendant had never previously had the slightest disagreement, and had gotten along well. It is, however, proved to our satisfaction, as it seems to have been to that of the court and jury a qua, that the plaintiff had not properly performed the duties of chambermaid according to the rules of the boat and the orders of the captain, in violation of which and to the annoyance of lady passengers, who complained of it, she had, instead of attending to the berths and rooms in the ladies' cabin herself, frequently made a cabin-boy do so, and had sent the captain an insolent message in regard to it. At the time of the immediate difficulty, as before remarked, she appears to have been not only insolent and insubordinate to the commanding officer of the boat, whose orders it was her duty to obey, but to have attempted actual violence toward him. The court and jury below doubtless thought, as we think from the evidence, that she provoked the difficulty with the defendant by her own misconduct and insolent demeanor, without which nothing in the record leads us to believe it would have occurred. Not only does this impression result from the evidence of the immediate facts, but from the well-established character of the defendant as a peaceable and quiet officer and man who never had a difficulty with any one else, and according to the

plaintiff's testimony never prior to that even with her, together with his responsibility and duty as captain to preserve good order and suppress disturbances on his boat.

Whether we take the statement of Dr. Moore, who was consulted by plaintiff at Shreveport, immediately after the occurrence, and who testifies to her violent language and demeanor in regard to the defendant at that time, or that of Dr. Kennedy, who only saw her after her return to New Orleans, the injury which she received appears to have been rather the result of accident than design on the part of the defendant, even if it was not the necessary consequence of her own conduct, and to have been by no means sufficient to warrant so extravagant a demand as the present. The evidence of actual damage is inconsiderable, as we have seen. The defendant's legitimate authority was defied and his passengers annoyed by the plaintiff, and he was greatly provoked and threatened with actual violence by her. While there is evidence of several witnesses to the good conduct of the plaintiff on other occasions, there is none to support her own unaided testimony against the preponderating evidence of the defense that her own conduct, on this particular occasion, was the cause of the difficulty. Suits of this character were of somewhat frequent occurrence about the time this arose. Most of them were no doubt born of the false teachings and bad advice of the hour, and we trust the occasion and the disposition for them on the part of persons of the class of the plaintiff have passed away, and that instead of cultivating an offensive spirit of independence of just control by and insubordination toward those in authority over them, they will learn the necessity and benefits of civility to all and obedience to the authority to which they voluntarily submit themselves, and with which custom and the law from necessity clothe the commanders of ships and steamboats. But while officers like the defendant must necessarily police and control their own boats and those employed on board of them to a great extent, we by no means wish to be understood as justifying on their part the use of wanton or unnecessary force, or of violations of the law toward even their subordinates ; were such a case before us we should unquestionably visit upon the offender the consequence of his act. There is a mass of evidence in this voluminous record much of which is irrelevant. The case was tried by a jury who heard and saw the witnesses, and under the eye and ear of an upright and intelligent judge. The former found a verdict for the defendant, and the latter refused to set aside that verdict and award a new trial. The evidence taken together has made no such impression upon us as would warrant or induce us to avoid that verdict and the judgment based upon it in a case so peculiarly within the province of that court and jury. If any other result could follow a new trial it would necessarily entail additional expense to all with little prospect of

Johns vs. Brinker.

profit to any party to the litigation. If the defendant was in fault he has, we think, been sufficiently mulcted and learned a sufficient lesson in the progress of the multifarious and expensive litigation which has followed, and we trust the plaintiff will also be wiser in future than to embark in such ventures.

The plaintiff excepted to the refusal of the judge *a quo* to receive the depositions of N. W. Smith and Peggy Matthews taken under affidavit. We do not think the court erred. The notice was insufficient and the evidence taken *ex parte*. Were the evidence, however, before us it would not in our opinion affect the conclusions to which we have arrived, nor do we think it sufficient to have countervailed the effect of the other evidence with the jury and court below, or to have been likely to affect the verdict and judgment.

It is therefore ordered, adjudged, and decreed that the verdict and judgment appealed from be affirmed, with costs of both courts to be paid by the plaintiff.