(35 South. 491.)

No. 14,850.

MILLER v. MECHE.

(Dec. 14, 1903.)

PARENT AND CHILD—TORTS OF CHILD—LIA-
BILITY OF FATHER.

1. The father of a minor convicted of shoot-
ing with "intent to kill" may not be liable (de-
spite the conviction), for the injurious act there-
by committed by his minor son, in a civil suit,
brought after conviction, to recover damages
from him.

2. While the father may be liable for the
wrongful act of his minor son under article
2318 of the Civil Code, it must be shown, in
order to render him liable, that the one who
had a difficulty with the son was not himself
at fault in the trouble which resulted injuri-
ously to the claimant for damages.

3. One who avoids the law, makes no com-
plaint to the authorities, who is quick to meet
a minor, and the first to resort to insulting
words and then to blows, is not in a position to
recover damages for injuries which were re-
ceived in the struggle which ensued.

(Syllabus by the Court.)

Appeal from Eighteenth Judicial District
Court, Parish of Acadia; Conrad De Baillon,
Judge.

Action by Moise Miller against Edgar
Meche. Judgment for defendant, and plain-
tiff appeals. Affirmed.

Veazie & Pavy, for appellant. Story &
Pugh and R. Lee Garland, for appellee.

BREAUX, J. Plaintiff, Moise Miller, asks
to recover of the defendant the sum of
$6,201.50; $5,701.50 of which are asserted
actual damages suffered by him, and $500
of which are claimed as exemplary damages.

Plaintiff alleges, in substance, that he has
suffered damages to this amount at the hand
of Homer Meche, the minor son of defend-
ant, Edgar Meche, by whom he was shot
and severely wounded.

The defendant, in substance, sets forth, in
his answer to plaintiff's demand, that plain-
tiff was the aggressor in the difficulty with
his son in which he was shot, and that his
son only sought to defend himself.

The case was tried before the judge.

His decision was adverse to plaintiff, and
he dismissed his suit. Plaintiff has appealed.

The action to recover damages from the

father for the wrongful act of the son was
brought under article 2318 of the Revised
Civil Code.

It is met by defendant on the merits.

There is no question of the want of right
of action against the father for the injurious
act of his minor son.

The questions presented are mainly of fact.

Many witnesses were examined, and differ-
ent accounts given of the difficulty between
plaintiff and defendant's son.

We will state, before proceeding further
with our decision, that Homer Meche, the
son of defendant, was indicted by the grand
jury for shooting with intent to commit mur-
der, and was brought before court in a
criminal case against him, was tried and
found guilty, by a petit jury, of shooting
with intent to kill the plaintiff, and was
sentenced by the court to two years in the
penitentiary, in which he is serving the sen-
tence pronounced.

The trouble between the two arose at a
ball in the parish of Acadia, and it resulted
in a wound inflicted on plaintiff which is
referred to by one of the attendant phy-
sicians as a dangerous wound from which a
victim seldom recovers.

There is a motion left in the upper portion
of the arm, and none in the forearm.

There had been bad blood between plain-
tiff and defendant's son for some time.

The father of the plaintiff, and the plain-
tiff himself, reminded of the minority of de-
fendant's son, sought to restrain the latter's
animosity (which had manifested itself in the
use of intemperate language) by afterward
sending messages to defendant to see to it
that his son ceased to be disagreeable to
plaintiff, and stop his unbecoming rudeness
in this regard. This did not have the de-
sired effect.

The testimony shows that peaceful mes-
sages afterward were changed to utterances
on both sides that were of a very unfriendly
nature. One looked upon and spoke of the
other as his enemy. There was decided bad
blood on the part of each.

On the night of the difficulty, at a dance
given to a young couple just married, plain-
tiff had a loaded "quirt," while defendant,
who was in liquor, was armed with a pistol.
We refer to the "quirt" to say that its pos-
session at the time by plaintiff is scarcely

consistent with the position which he sought to maintain in the suit—that he left his home expecting no trouble or difficulty, unarmed, and with no means of defending himself.

At the dancing place, intended, doubtless, to be agreeable, but marred by the difficulty in question, the son of the defendant came out of the body of the house to the gallery. On seeing plaintiff he said that he was master of his enemies, and made the equally foolish remark that, though a minor, his pistol was of age.

Plaintiff, as we read the testimony, gave him the lie direct, and immediately, we take it, each prepared for the fray. We do not for an instant think, after having carefully read the testimony, that it was the intention of plaintiff at the time to create a difficulty.

In the disturbed condition in which each was as soon as they commenced to talk to or at each other, it took but a moment to resort to blows.

By the exercise of some coolness and a little self-possession, and by not rushing into a fight upon slight provocation, it is probable that plaintiff would not have lost his right arm, so much needed for his support and that of his wife and two children, and his antagonist would not have been condemned to punishment as before stated.

There is no question here of negligence and contributory negligence. The act was willful on both sides, and for that reason it was not one of negligence or contributory negligence. Amer. & Eng. Ency. of Law (2d Ed.) verbo "Contributory Negligence."

The acts of plaintiff contributed to provoke his antagonist.

His conduct, in denouncing him as he did, and in striking him (to put the most favorable phrase upon it), was erroneous and illegal. It was mistaken conduct. In their own way plaintiff and those with whom he advised prior to and on the night of the difficulty had rude, but correct, notions of the law. They sought the father's influence to restrain his son, for whose conduct he, the father, was unquestionably responsible. Plaintiff very properly, on the night in question, said to the minor: "Go away from me; you are a minor." But a moment after he changed his conduct toward this minor, and contributed in bringing on the trouble.

There are five years' difference between the two. The minor was about 20 years of age.

Plaintiff was the larger and stronger man.

If he had gone into the fight with his naked fist, defendant would be liable.

But the instrument with which plaintiff attacked is suggestive of humiliation and degradation. Nearly all men would prefer to suffer the most adverse and cruel fate than to be chastised with a whip.

A quirt is a rawhide whip plated with two thongs of buffalo hide. Webster's Dictionary. Plaintiff testified that in striking Homer Meche it was to disarm him and prevent him from shooting. This is not sustained by the testimony. There was an element of wrong on the part of plaintiff in using the quirt.

It is sought to hold the father liable in damages in a civil action.

Issues, in the nature of things, are different from what they would be between plaintiff and son.

Plaintiff chose to disregard the law. As his trouble was with a minor, the courts were open to hear his trouble, and before the courts he might have shown, if such was the fact, that the father was unmindful of the duty he owed to his children and to society, and then the strong arm of the courts would have protected him in all of his rights. This the plaintiff did not do.

There was no wrong in the mere presence of the minor at the ball. The testimony does not show that the father knew that he was armed, or that he knew of his drunken condition, nor is there any testimony before us going to prove that on the night in question it was possible for the father to prevent the shooting.

These are elements which enter into the case to an extent, at least, when it is sought to hold the father liable for the damage caused by his son.

The disposition of the law in this respect is exceptional and rigorous. It should not be extended.

Those who claim from the father or tutor for offenses committed by the son or ward must bring themselves strictly within the law.

It must be shown, when the father or tutor was absent and when he had naught to do

with the trouble, either directly or indirectly, that owing to a want of discipline in the family, or to the negligence in not exercising needful paternal influence and authority, he is liable.

The following, in substance, is the text of Fuzier-Hermann, vol. 3, p. 88, No. 77, in reference to the article of the Civil Code, No. 2,-318: Held, that the father is not liable if he proves that owing to his absence he could not prevent the deed.

Again, it is not negligence per se for a father to place a pistol at the disposition of his grown minor son. Id.

But here, different from the case referred to by Fuzier-Hermann, it does not appear that the father knew that his son left his home with a weapon.

Some time prior to the difficulty the father was informed by friends of plaintiff that his son carried a pistol. He attempted to take it away from him.

But the incident, as related by witness, does not impress us with the necessity of holding the father liable because his son had a weapon on the night of the difficulty.

Originally there were three parties—plaintiff, the son of the defendant, and the state.

The state punished the wrong through the same court before which the civil suit was brought.

The trial judge, by whom the son was sentenced, decided that here the plaintiff is not entirely blameless. After a careful review of the testimony we have arrived at the same conclusion.

The question is very similar to that which was decided in Bankston v. Folks, 38 La. Ann. 267.

Our learned Brother of the district court, in his reasons for judgment, stated that the whole affair is a disgrace. "Miller should not have armed himself with a loaded quirt, nor returned to the ballroom door where Meche was, and it is equally true that Meche should not have gone to the ballroom armed with a pistol. If Miller had apprehended violence from Meche, his plain duty was to make oath of it before an officer of the law, and have him bound over to keep the peace."

To which we add, the place of innocent, festive amusement should not be invaded, and the lives of innocent persons exposed, by men bent upon satisfaction for wrongs, imaginary or real.

For these reasons the judgment is affirmed.

MONROE, J.   I concur in the decree.