LUCIEN CUSIMANO

VS

EDWARD P. DURNIN.

No. 7457.

April 3" 1919

CHARLES F. CLAIBORNE, JUDGE.

Plaintiff claims damages from defendant on the allegation that an automobile owned by defendant and operated by his minor brother ran into his wagon and injured it.

He alleged that at about 12 o'clock in the day his horse and wagon were standing on Rampart Street; "that an automobile owned by the defendant and operated by his minor brother, with his knowledge and consent, without regard to property rights, carelessly and negligently ran into the horse and wagon of your petitioner from the rear" causing damages to the extent of $251.00; that defendant admitted his liability and offered to pay $100 which petitioner refused.

The defendant denied every allegation in plaintiff's petition contained, except such as he specially admitted. He averred that it was true that his brother was driving an automobile which was his, the defendant's, property; but that his brother was over twenty years old, and was a competent chauffeur; that the accident was unavoidable and occurred in the following manner; that defendant's brother was driving his automobile on Rampart Street, wood side, going in the direction of Canal Street; that when he reached a point about 150 feet from the corner of Governor Nicholís' Street, he saw a woman crossing Rampart Street from the wood side to the River; that he blew his horn; that the woman had nearly reached the neutral ground when she suddenly retraced her steps; that in order to avoid running over her, his brother swerved to the right and in doing so unavoidably ran into the plaintiff's wagon striking the rear wheel.

The judge of the District Court found in favor of plaintiff for the following reasons:

". . . Despite the excellent and exhaustive argument tending to exculpate defendant from liability, I am of

244

opinion that the defendant did not use proper diligence
in keeping his defective automobile off the street. He
negligently permitted, if he did not consent to, its
use by his brother who is employed by him, and who should
have enforced the rule said to have been laid down. I
think defendant negligent and liable. The pleadings are
sufficient, even though the charge of $30 hire for wagon
was in fact hire for horse".

The defendant appealed.

We are at a loss to understand upon what theory it is at-
tempted to hold the defendant liable. The petition alleges that
the damage was caused by defendant's minor brother. There is no
law that makes one liable for the acts of his brother, whether a
major or a minor. The Articles of the Code 2317 to 2322 designate
the persons for whom one is responsible, and among those we do not
find that one is liable for the acts of his brother. In Miller
vs Meche, 111 La., 143 (146) the Court said:

". . . The disposition of the law in this respect is
exceptional and rigorous. It should not be extended.
Those who claim from the father or tutor for offenses
committed by the son or ward must bring themselves
strictly within the law".

"The legal responsibility for the acts of others
constitutes an exception to the common law and cannot
extend by analogy to other cases than those expressly
and limitatively provided by law". 3 Dalloz Codes An.
p 774, No. 10, 12, 13, 16 et seq.; 39 Dalloz Rep. Leg.
p 401 No. 500; 7 Merlin Rep. Im. p 240 Vo.. Delit $ VIII;
11 Toullier $ 258; 2 Sourdat $ 753; 31 Demol.$ 595;
20 Laurent $ 551; 4 Aubry et Rau p 767; 13 Duranton $720;
13 Baudry $ 2938.

Nor is the defendant liable because the automobile that
did the damage was his property, even though it was in the hands
of his brother with his consent.

"Where a motor vehicle is being used by a mere li-
censee and is under his control, the owner is not liable
no matter how gross may be his negligence". 28 Cyc p 39 $

III; 147 N. Y. Supp., 1087; 133 S. W., 354; Davids Law of Motor Vehicles, Sec. 205, 207, 208; Hale on Bailments p 200; 6 C. J. Bailment p 1151; 163 S. W., 301; 144 N. W., 745; 163 S. W., 301; 144 N. W., 745; 145 N. Y., 708; 156 N. Y., 369; 142 Pac., 351; 71 Maine 432; 147 N. W., 1014; 138 N. Y., Supp., 119; 162 N. Y., Supp., 992; 71 S. E., 492; 92 S. E., 295; 74 So. 422; 163 S. W., 594; 62 So., ?8; 77 S. E., 1099; 111 N. E., 647. *Marullo v Pastem No 23094 Sup. Ct.*

"The reports are full of cases holding that where a servant, even with the master's consent, takes the latter's car and while using it for his own purposes negligently injures a person thereby, the master is not liable". 200 S. W., 289, 1068; 169 N. Y, Supp., 490; 168 Pac., 863; 13 Cyc Depositary, 812; 10 A., 403. In Hart vs R. Rd. Co., 4 A., 261, the Court said: ". . . The responsibility of the defendants to the plaintiff, as we apprehend, depends not upon the ownership of the omnibus, but upon the fact that the damage was done by their servant, for whose acts they are sought in this action to be made liable".

In Rousseo vs Gauche, 8 Ct. App., 219, we said: ". . . We do not think that the possession of the lessee is that of the lessor to the extent that the latter is responsible for the use which his lessee makes of the thing leased". 1 Baudry - Lac Louage ⊝1041; 6 C.J., 1151 § 114.

Plaintiff argues that an automobile was declared to be a"death-dealing" machine by the Supreme Court in the case of Burvant vs Wolfe, 126 La., 787, and because of that fact, defendant is liable for having put it in the power of his brother to get possession of it and drive it. We have been referred to no authority in support of that proposition. But the decisions quoted heretofore would seem to be adverse to it. An automobile is only relatively a "death-dealing" machine. It is inherently absolutely innocuous; in that respect it differs from vicious animals; and therefore the rules of liability applicable to the owners of

246

the latter do not apply. It is only when the machine is put in motion, that it may become dangerous, or "death-dealing", but then only in the hands of inexperienced or careless chauffeurs; then the danger results not from the machine but from the manner of driving it. So are electric tramways "death-dealing"; nevertheless, we have yet to learn that a railroad company was held liable for injury done by a car solely upon the ground that it was the owner. A razor, a shot gun, a pistol, and many other articles are "death-dealing" and yet the owner could not be held liable for the damage caused by one to whom he had loaned it, unless it was alleged and proved that the borrower was not competent to use it and there was fault or negligence in lending it to him.

In the present case the defendant's brother was twenty years old and a competent chauffeur; therefore, there was no imprudence in allowing him to use the machine.

> "The act of the father to have left at the disposal of his minor child a fire-arm which he used in a damaging manner must not necessarily be considered as an imprudence involving his responsibility, especially when the minor is twenty years old". 3 Fuzier-Herman, p 881 76.

The District Judge seems to have rested his decision upon the fact that the machine was not in good condition, and "that the defendant did not use proper diligence in keeping his defective automobile off the street, and that he negligently permitted, if he did not consent to its use by his brother who is employed by him". There might have been weight in that reasoning if the accident had been caused by the want of repair or by a defect in the machine. But the evidence is that the accident was caused, as stated in the answer, by a woman getting in the way of the machine and by the driver suddenly swerving to the right to avoid her. The condition of the machine had no connection with the accident. The accident would have happened just as well with a machine in perfect running order.

The plaintiff finally attempts to hold the defendant on the ground that this brother was his employee. The evidence is that the defendant was in the automobile hiring business; that

his brother was not the chauffeur employed to drive the machine; that his brother drove it only in the absence of the regular chauffeur; that the machine had been laid up because it was out of order; that on the morning of the accident defendant's brother was using the machine to take his own clothes to the laundry and not for the benefit of the defendant nor in pursuit of his business

It is true that these facts established that the defendant employed his brother; but another essential fact must be established to make the defendant liable on the theory of master and servant. It must be shown that the damage was caused by the servant "in the exercise of the functions in which they are employed". C. C. 2320. The theory of the master's liability is his fault in making an improper selection of an incompetent servant to carry on his business.

In the case of Brenner vs Ford, 116 La., 550, defendant's horse driven by his driver ran over and killed a child. The Court said that at the time of the accident the driver was driving the horse "for his own pleasure and not in the discharge of any duty imposed upon him by his employment as a servant". See also 127 N. Y., Supp., 220; 93 N. Y. Supp., 161; 134 N. W., 14; 5 Ct.App., 297; 177 Ills. App., 367; 108 N. E., 153; 107 N. Y. App. Div., 120; 94 N. Y. Supp., 771.

"In order to hold the employer liable, the damage must be done through the neglect of the slave hired while he is actually engaged in the functions or duties intrusted to him". 18 La., 490

The test of the master's liability for damage caused by his servant therefore is: was the servant performing his employer's work, or was he in the discharge of his duties as a servant at the time the damage was caused? If he was, the liability of the master attaches; if he was not, the master is not liable. In other words the liability of the master arises only when he is doing his work through the servant qui facit per alium facit per se - and the master is liable for the manner in which the servant does his work, as if it was being done by the master himself.

"The test by which to determine whether the master is liable for the tortious acts of his servant, is not

248

whether it was done during the existence of the employment, that is to say, during the time covered by the employment, but whether it was done in the prosecution of the master's business". Upon this subject it has been said: In determining whether a particular act is done in the course of the servant's employment, it is proper first to inquire whether the servant was at the time engaged in serving his master. If the act be done while the servant is at liberty from the service, and pursuing his own ends exclusively, the master is not responsible. If the servant was, at the time the injury was inflicted, acting for himself and as his own master pro tempore, the master is not liable. If the servant steps aside from his master's business, for however short a time, to do an act not connected with this business, the relation of master and servant is for the time suspended. Such, variously expressed, is the uniform doctrine laid down by all authorities". 1 Thompson on Negligence 526, p 489; 26 Cyc, 1525 § 3, p 1536 (c).

"If a driver, turns wholly aside from the master's employment and goes on an independent journey, wholly foreign to his employment, for a purpose exclusively his own, the master is not liable for his acts during such time. For instance, if the servant takes out the master's horse or team, antomobile or hand car for his own pleasure or purposes, when not acting for the master, or after he has been ordered to put them in the stable, the master is not liable for injuries received by third persons while the servant is thus acting for himself." 26 Cyc, p 1536 (c)

"Where a servant employed in the delivery of goods by wagon drives out of the way of his route for the purpose of visiting his home, the master is not liable for injuries to a child caused by the servant's negligent driving as he left his home". id note 16.

"In order to establish liability, the persons must not only be general employees of the owner but must be in his business at the time the injuries are caused and not merely in their own recreation and pleasure". 28 Cyc

249

p 38 note 29; 56 Ga., 274; 1 Hill, 480; 47 H. Y., 122; 7 Am. Rep., 418; 2 N. H., 548; 37 Mich., 205; 71 Me., 432; 36 Am. Rep., 336; 45 Conn., 44; 22 Am. Rep., 635; 31 Minn., 351; 47 Am. Rep., 793; 73 N. Y., 543; 177 Ills. App., 367; 108 N. E., 153.

The evidence in this case failing to show that the accident occurred while the defendant's employee was in the discharge of his duties as such, the employers incurred no liability.

It is, therefore, ordered that the judgment herein be reversed and avoided, and that there be judgment in favor of the defendant rejecting plaintiff's demand at his cost.