## WELCH v. VAN VALKENBURGH.
### No. 5921.

Court of Appeal of Louisiana.  Second Circuit.

April 28, 1939.

Alwine L. Mulhearn, of Tallulah, Thompson L. Clarke, of Baton Rouge, and George Wesley Smith, of Monroe, for appellant.

James H. Gilfoil, Jr., of Lake Providence, for appellee.

HAMITER, Judge.

Sam Welch was slain about 11 o'clock of the night of September 3, 1936, in the Town of Sondheimer, East Carroll Parish, Louisiana.  The wielder of the deadly weapon was defendant, Henry L. Van Valkenburgh, the manager of a saloon in that community.  Decedent's widow asks damages from said defendant in this proceeding, alleging that the slaying was without lawful cause or justification in law.

Answering, as is disclosed by the brief of his counsel, defendant "admitted that he shot and killed Sam Welch on the date alleged but denied liability to plaintiff therefor and denied most of the remaining material allegations of plaintiff's petition; said defendant alleged that he was forced to shoot the said Sam Welch in defense of his own life, the difficulty having been provoked by the said Sam Welch and said Welch having been the aggressor throughout said difficulty."

The trial court's judgment, rendered on the merits of the case and after the assignment of written reasons therefor, rejected plaintiff's demands.  She appealed.

In the Town of Sondheimer, Louisiana, is a combination gambling establishment and saloon known as Van's Place.  The building housing this enterprise of vice consists of three rooms and a front porch.  Poker games are conducted in one room, dice games in another, while the third is occupied by the bar.  Approximately 75 feet from this structure is a house which decedent was using as his home when the shooting occurred.

Defendant, a person 58 years of age, had his domicile in Lake Providence, Louisiana, about 18 miles away.  He managed the Sondheimer establishment and also a similar place located in his home town, both of which were owned by H. S. Franklin.  His acquaintance with Welch extended over a period of several years, it having commenced when the latter killed another person in February, 1934.  In December, 1935, Welch entered defendant's employ and continued therein until about three weeks prior to his death.

At approximately 5 o'clock of the afternoon of September 3, 1936, plaintiff's husband, whose age was then 36 years, entered Van's Place and commenced the imbibing of strong drink.  He drank freely and soon became highly intoxicated.  However, he was able to walk around and had control of himself.  While in this condition he assumed a belligerent and threatening attitude and interfered with the activities of all others present.  The language employed by him during his stay of several hours there was liberally interspersed with vile, opprobrious and scurrilous epithets.  One witness offers the observation that, "Well, he said everything that could be said in curse words.  I don't think he left anything out"; while another says, "He seemed to know all the words."

During the progress of the dice game he fell on the table, grabbed the ivories and

picked up the money or bets of those participating. Much annoyance was furnished by him.

The presence of several women in the establishment was responsible for Welch's desire to dance. Each refused to accommodate him in this respect, whereupon he slapped one of them.

On another occasion Welch threw a bottle at two persons. Neither was struck. Also, he engaged in the snatching of hats from the heads of customers.

Success did not attend Welch's efforts at the poker table. Upon losing all of his chips, he jumped up, raised a chair above his shoulders to a striking position, and shouted, "I'm going to knock you * * * in the head." This epithet was not singly directed. All gambling were included. The chair was removed from his hands before his purpose was accomplished.

Almost continuously from the time of entering Van's Place until he was slain decedent busied himself with abusing, cursing, and mistreating others, and attempting to start physical encounters. As the trial judge correctly found and said, "Welch made a nuisance of himself most of the time during his stay at the saloon on the night in question." After he had been unruly for some time, in the manner above described, the bartender telephoned to defendant, who was at his home in Lake Providence, to come to the place of business. The latter, who "seemed to be able to handle him · better than anyone else", responded to the call. On arrival defendant sought to quell the disturbance by inducing the disturber to go home, a short distance away as shown before. On numerous occasions decedent was escorted to the front door, but on each he returned. Defendant was employing peaceable means, while decedent cursed vehemently.

During the course of the evening a bystander heard Welch make the remark that "he was going to get his gun". The latter was leaving the premises as this was said. Subsequently he came back. Defendant was informed of the utterance.

When the poker game disturbance occurred defendant, who was in the building, was requested to lend assistance. Compliance resulted by the disarming of Welch of the chair and conducting him outside of the place. After engaging in conversation there, the two commenced walking toward decedent's home. One of defendant's arms was around Welch and they talked as the short journey was being made. The latter continued to curse. After traveling about 30 or 40 feet Welch jumped from the embrace of defendant and either hit or pushed him. Thereupon defendant slapped Welch. The latter then pulled up his sleeves and "grabbed down at his pants". This was followed by defendant's drawing of a pistol from the inside of his shirt and firing rapidly therefrom five or six times. All bullets penetrated Welch's body.

Immediately afterwards defendant instructed a bystander to call a physician and then walked into the saloon and telephoned the sheriff of the parish. Examinations made by the physician and the peace officer, on their arrival at the scene, disclosed that decedent was unarmed at the time.

Defendant was arrested and placed in jail. However, the grand jury did not indict him and he was released.

It is the testimony of the postmaster of Sondheimer, who appeared as a witness in plaintiff's behalf, that he considered decedent "a pretty dangerous man when he was drunk"; and that defendant's manner toward Welch during the evening in question was peaceable, while decedent's attitude toward the other was hostile. Another of plaintiff's witnesses states that Welch usually ·carried a pistol.

This court in the case of Lide v. Parker, 6 La.App. 648, considered a claim for damages somewhat similar to the one presently before us. The evidence therein disclosed that defendant struck plaintiff's husband, indirectly resulting in death, after the latter made a motion as if to strike him. In the opinion we said:

"The question whether defendant was justified in doing what he did is not the point. The question is whether the deceased, by his conduct, brought on the encounter which resulted in his death.

"The deceased unquestionably provoked the difficulty. There is absolutely nothing to indicate that defendant bore the slightest ill will or malice toward the deceased. · He greeted deceased in his store cordially, the two shaking hands. According to the testimony of defendant and his wife, and that is all there is in the record, defendant was not irritated or angered by deceased's conduct. He asked deceased to leave the store, but did not threaten or attempt to put him out, but spoke to him courteously. Deceased became angered, refused to leave

and told defendant he could not be put out. Defendant made no hostile move until deceased attempted to assault him.

* * * * * *

"Our view of the case is that deceased, by his conduct and especially his attempted assault upon defendant, provoked the difficulty which resulted in his death, and that, under the law, his widow cannot recover."

The settled jurisprudence of this state on the subject is to the effect, as stated in Oakes v. H. Weil Baking Co. et al., 174 La. 770, 141 So. 456, that, "one who provokes a difficulty with another cannot recover damages for injuries inflicted upon him as a result thereof, even though the conduct of the one who inflicts the injuries was not justified in law. Lide v. Parker, 6 La.App. 648; Vernon v. Bankston, 28 La.Ann. 710; Johns v. Brinker, 30 La.Ann. 241; Bankston v. Folks, 38 La.Ann. 267; Miller v. Meche, 111 La. 143, 35 So. 491; Massett v. Keff, 116 La. 1107, 41 So. 330; Bonneval v. American Coffee Co., 127 La. 57, 53 So. 426; Fontenelle v. Waguespack, 150 La. 316, 90 So. 662."

In the instant case, as before seen, the decedent was the aggressor throughout the whole evening. He mistreated and abused everyone present, including defendant, and continually invited trouble. On the other hand, defendant was unbelligerent, acted without malice, and offered courteous assistance to Welch until the time of the occurrence of the tragedy.

Of course, it might be correctly said that decedent's demeanor and his actions while inside of the establishment were insufficient to provoke or incite the taking of his life; however, the aggression displayed by him, while on the trip from the building to his home, in breaking away from defendant, in striking or pushing the latter, and in extending his hands towards his trousers, could easily have furnished the reasonable belief on defendant's part that extreme harm was about to be committed. Particularly is this true when it is considered that decedent bore the reputation of being a dangerous person when drunk, and that his remark about securing a pistol had been communicated to defendant a short time previously.

In aid of the success of their cause, plaintiff's counsel emphasize the established facts that defendant was sober while Welch was drunk and that the former was of larger stature than the latter. These differences do not appear to influence a decision favorable to plaintiff. Although in an intoxicated condition, decedent had control of himself and was extremely active. The plaintiff in Vernon v. Bankston, cited supra, "had been drinking to excess", yet he was denied recovery in his suit for damages for physical injuries sustained at the hands of the defendant therein. Then, too, if decedent herein had possessed a loaded and accessible pistol at the time, his possession would have ably and satisfactorily offset the difference in size that existed between him and defendant.

It is said in the brief of plaintiff's counsel that, "No attempt was made to call an officer of the law to take Mr. Welch in charge as would have been the proper procedure and would probably have saved Mr. Welch's life. Instead, Mr. Van Valkenburgh took the matter into his own hands and killed Mr. Welch." A similar contention was made in the case of Bankston et al. v. Folks, cited supra, and the Supreme Court answered it in the following words:

"The whole affair is a disgrace to any civilized community. Folks should not have armed himself, nor sought Bankston, nor fired. If he apprehended violence from Bankston, his plain duty was to make oath of it before an officer of the law and have him bound over to keep the peace.

"But Bankston's threats of violence caused the rencounter and his efforts to get a pistol provoked the shooting, and although Folks was not justifiable in doing what he did, Bankston cannot recover because he was himself in the wrong, and because the difficulty could never have occurred had he not invited it by sending messages to Folks well calculated to alarm him for his personal safety."

Perhaps defendant was not justified in law in slaying Welch; but nevertheless the evidence is convincing that the latter provoked the unfortunate occurrence, especially when he attempted the striking and reached for his trousers, and his widow cannot recover herein.

The judgment is affirmed.