On June 9, 1942, at about 5:30 p.m., plaintiff was shot and severely wounded by defendant at the entrance of a parking lot operated by defendant at #630 Carondelet Street in the city of New Orleans. Plaintiff seeks recovery of $21,165 damages for the alleged felonious assault and battery.
Defendant admits the shooting but resists the demand on the ground that he inflicted the wounds in self defense and as the result of an encounter in which plaintiff was the aggressor. After a trial in the District Court, there was judgment in plaintiff's favor for the sum of $3,155. Defendant has appealed and plaintiff has answered, praying that the award below be increased to $12,000.
The facts, which led up to the encounter between plaintiff and defendant culminating in the firing of the shots, are as follows: Defendant operates an open parking lot situated on Carondelet Street near Lafayette Street and he and plaintiff were not acquainted with each other prior to the unfortunate occurrence. Plaintiff was driving his car down Carondelet Street in the direction of Canal Street following closely behind an automobile operated by a Mrs. Alta Corvers. Just before the Corvers automobile arrived at the entrance of defendant's parking lot, Mrs. Corvers slowed down and turned to the right, or towards the entrance of the lot. As she did so, plaintiff's automobile, which was following her as aforesaid, struck the rear end of her car. As a result of the contact, which was very slight, the front fender of plaintiff's car sustained minor damage. Plaintiff thereupon stopped his car directly in the ramp or entrance of defendant's parking lot and dismounted therefrom for the purpose of discussing the accident with Mrs. Corvers. The latter, who was accompanied by a friend, Miss Anna May Bando, had parked her car in defendant's lot and, upon alighting therefrom, engaged in conversation with the plaintiff concerning the cause of the accident. While they were discussing the mishap, defendant came upon the scene and demanded that plaintiff remove his car from the entrance of the parking lot as it was interfering with his business. Upon plaintiff's refusal to do so, defendant entered the car and was preparing to remove it from its position when plaintiff appeared and forbade him to move it. Defendant thereupon left the car, walked into the parking lot and, obtaining a pistol from his own automobile, came back and encountered plaintiff. Apparently an argument ensued, as the result of which defendant fired four shots at plaintiff. Of these, three shots took effect, one in the buttocks, one in the arm and one in the chest.
The evidence respecting the argument, in which plaintiff and defendant were engaged prior to the time the shots were fired, is most conflicting. Plaintiff says that he was talking to Mrs. Corvers and her companion about the collision when he observed defendant in the driver's seat of his car in the act of starting the motor; that he, plaintiff, ran over to the car, pulled off the switch and said to defendant "where the hell do you think you are going"; that defendant answered "I am the attendant of *Page 593 
this lot"; that, thereafter, he went back and renewed his conversation with the ladies; that, while he was conversing, defendant appeared with a pistol in his hand and said "I will shoot you"; that he replied "If you do, it will be a dirty dog act to shoot a man for nothing"; that he became afraid and started to retreat and that, as he did so, the defendant started firing and inflicted the wounds of which he complains.
On the other hand, defendant testified that, upon seeing plaintiff's car parked in the middle of his driveway, he went over and offered him a parking claim check; that, when he did so, plaintiff said "I don't want to park"; that he then told plaintiff that he would have to move his car as he was blocking the entrance to the lot; that plaintiff said "I will move it when I get damn good and ready"; that, when plaintiff made this statement, he realized that plaintiff was the type of man who would cause trouble and that he, therefore, walked away to look for a police officer; that, being unable to locate an officer, he went to his car, which was parked in the middle of the lot, got his revolver and walked back towards plaintiff's car; that, upon his return, he said to plaintiff "Mister, you are going to move your car. If you don't I will have to move it for you"; that plaintiff replied "you get in that car and I will break your damn neck"; that, thereafter, plaintiff rushed at him and called him vile names and that he fired three shots in order to protect himself.
Plaintiff's version of the trouble is supported by the evidence of one Harmon L. Mouring who says that, while he was stopped for traffic on Carondelet Street near the entrance of defendant's parking place, he saw defendant with a gun in his hand accosting plaintiff in a loud voice and that, as plaintiff turned and started to back away from defendant, the latter fired four shots at him.
Plaintiff's evidence is also corroborated in some measure by the testimony of Mr. Louis M. Buja, a witness for the defendant. Mr. Buja states that he had come to defendant's parking place for the purpose of getting his car; that he drove his car to the front of the lot but was unable to leave because plaintiff's automobile blocked the entrance; that he saw defendant board plaintiff's automobile; that, when defendant did so, plaintiff came over to the car and made defendant get out; that they were apparently engaged in a heated discussion but that he could not hear what was said as it was raining at the time and the windows in his car were closed. He further says that, when defendant left plaintiff's car, he went into the lot and came back about thirty seconds later with a pistol in his hand; that, when plaintiff saw the gun, he started to retreat and that defendant immediately opened fire.
The testimony of Mrs. Corvers and Miss Bando corroborates defendant to some extent. They assert that, while they did not see the shooting, plaintiff was most abusive and insulting to defendant.
The District judge, who saw and heard the witnesses, was evidently of the opinion that the shooting was not only unjustified but that defendant was the aggressor.
Counsel for defendant contend that the judgment of the District Court is erroneous and should be reversed for two reasons: (1) Because the citation, which was served on defendant, is illegal and (2) because the preponderance of evidence reveals that plaintiff was the aggressor. We shall discuss these two propositions in their respective order.
[1,2] Defendant filed an exception to the legality of the citation which was overruled by the District judge. This exception was based on the theory that, whereas the petition alleges that defendant is a resident of the Parish of Jefferson, the citation is addressed to him at No. 630 Carondelet Street, New Orleans, in violation of Article 179 of the Code of Practice which provides, among other things, that the citation addressed to defendant must mention "* * * the place of his residence, or that where he happens to be, in the manner set forth in the petition."
We find no substance in the contention. Since the cause of action arose in Orleans Parish, plaintiff had the right to cite and serve defendant there. The citation is addressed to defendant at his place of business. It is true that the petition alleges that he resides in the Parish of Jefferson but we do not interpret the requirements of the Code of Practice to mean that, in all cases, the citation must be addressed to a defendant at his residence "in the manner set forth in the petition." On the contrary, Article 179 provides that the citation must mention the place of defendant's residence "or that where he happens to be" followed by the words "in the manner set forth in the petition." The clause "or that where *Page 594 
he happens to be" clearly indicates that, if the service is made upon the defendant at a place other than his residence, the citation shall mention that place and the following words "in the manner set forth in the petition," which are separated from the clause preceding them by a comma, refer only to cases where citation is addressed to the defendant at the residence alleged in the petition. The case of Caldwell et al. v. Glenn, 6 Rob. 9, relied on by counsel for defendant, does not sustain their contention for the reason that, there, the citation did not mention the title of the cause, the residence of the defendant nor the place where the proceedings were being held. Under those circumstances, the court held that the citation was fatally defective because the defendant was not advised of the place where he was required to appear and file his answer.
[3] Counsel also maintain that the citation is illegal because it required him to file his answer within ten days from the date of service, whereas Article 180 of the Code of Practice provides that, if the defendant resides a greater distance than 10 miles from the courthouse, a delay of one day, for every ten miles that his residence is distant from the place where court is held, shall be allowed to him in addition to ten days, not to exceed fifteen days in all. This point cannot be sustained for the reason that there is no showing on the part of defendant that. his residence in Metairie Ridge, Jefferson Parish, was more than ten miles from the courthouse. The case of LeBlanc v. Trahan, 207 La. 171, 20 So.2d 745, relied on by counsel, is not in point for the reason that it appeared there that the residences of the defendants were more than fifty miles from the courthouse.
[4] Counsel for defendant proclaim that the decision on the merits is erroneous for the reason that it is well settled that a plaintiff may not recover in a civil action for assault and battery where he is the aggressor and that the evidence submitted at the trial clearly preponderates in defendant's favor on this question. Counsel further say that the cases of Oakes v. H. Weil Baking Co., 174 La. 770, 141 So. 456, and Randall v. Ridgley, La. App., 185 So. 632, which are cited by plaintiff, are in conflict with the well-established jurisprudence in assault and battery cases and, furthermore, that the facts appearing in those matters are distinguishable from the facts of the case at bar.
We observe, preliminarily, that we do not regard the opinions in the Oakes and Randall cases as announcing a new principle for the determination of liability in matters of this kind or that those pronouncements can be viewed to be at variance with the firmly settled jurisprudence in this state that a plaintiff, who has provoked a difficulty which results in his injury by assault and battery, is not entitled to recover damages. On the contrary, in both the Oakes and the Randall cases, the courts specifically pointed out that this doctrine was well established in Louisiana. In the Oakes case, the court said:
"The doctrine is well established in this state that one who provokes a difficulty with another cannot recover damages for injuries inflicted upon him as a result thereof, even though the conduct of the one who inflicts the injuries was not justified in law. Lide v. Parker, 6 La. App. 648; Vernon v. Bankston, 28 La. Ann. 710; Johns v. Brinker, 30 La. Ann. 241; Bankston v. Folks, 38 La. Ann. 267; Miller v. Meche,111 La. 143, 35 So. 491; Massett v. Keff, 116 La. 1107, 41 So. 330; Bonneval v. American Coffee Co., 127 La. 57, 53 So. 426; Fontenelle v. Waguespack, 150 La. 316, 90 So. 662."
In that matter, the court found that the plaintiff could not be considered as the aggressor, even though he was not without fault in provoking the difficulty, because the defendant was equally guilty of blame and that, under such circumstances, the fact that the plaintiff was partially responsible did not preclude his recovery since defendant used unnecessary force in ejecting plaintiff from the premises. The decision in the Oakes case is the last expression of our Supreme Court on the subject and we not only fail to see that the doctrine of that case departs from the prior established jurisprudence but that it merely holds that, where plaintiff and defendant are equally guilty of fault in provoking a difficulty, plaintiff is not to be regarded as the aggressor and that defendant is liable in damages where he uses undue force not justified by the occasion.
[5] When we view the facts of this case in the light of the jurisprudence, we experience no difficulty in concluding that the judge of the District Court was correct in finding the defendant liable. Considering the conflicting testimony of plaintiff and defendant as a whole, we gain the impression that they did not state the entire truth. Plaintiff asserted that defendant *Page 595 
shot him without any provocation whatsoever and defendant would make it appear that the shots were fired at a time when plaintiff was advancing on him and menacing his life. We do not think that either statement is wholly genuine and we prefer to believe the testimony of Buja and Mrs. Corvers to the effect that, when defendant attempted to have plaintiff move his car from the entrance to the parking lot, plaintiff, who was evidently somewhat excited as the result of the collision which had just ensued, not only refused to remove his automobile until his discussion with Mrs. Corvers had been concluded but that he informed defendant in no uncertain manner that he would not tolerate interference on his part. But plaintiff's stern and unyielding attitude in this respect certainly did not warrant defendant's action in taking the law into his own hands and committing a felonious assault upon plaintiff's life. The evidence, we think, justifies the belief that defendant assumed an equally positive attitude — that is, that be was going to force the removal of plaintiff's car even if he had to kill him in order to accomplish his purpose. His demeanor was that of an aggressor and not justified by the situation presented. The mere fact that plaintiff had parked his car in such a position as to block the entrance to the parking lot and refused to permit its removal cannot in any sense be relied upon by defendant as a defense for his belligerent stand that the car had to be removed or else bloodshed. In fact, when we consider the circumstances here presented and compare them with the facts appearing in the Oakes case, it is clear that defendant is liable.
[6,7] We finally consider the quantum of damages. The wounds received by plaintiff were very serious and both litigants are, indeed, most fortunate that death did not result. During the time he was in the hospital, plaintiff was given at least eleven blood transfusions and his spleen was removed. Other injuries were — diaphragm fractured; lung punctured; left arm fractured, resulting in the paralysis of some of the muscles of the arm and hand and there still remains a bullet in plaintiff's back near his spine. Prior to the accident, plaintiff was a skilled workman, a shipwright, being in charge of a crew of ship-fitters. As a result of the wounds he received, he has been unable to resume his normal occupation although he is a comparatively young man (43 years of age). The judge, in awarding plaintiff the sum of $3155 damages, evidently gave much consideration to the fact that defendant is a poor man and cannot pay a large judgment. In Danove v. Mahoney, 176 So. 404, and other cases, we have recognized that the ability of the defendant to respond in damages will be taken into consideration in determining the amount of the judgment. But the principle announced in those decisions should not be interpreted to mean that a substantial award will not be given to a plaintiff as compensatory damages merely because defendant is unable to respond. In this case, we feel that, under ordinary circumstances, a judgment in plaintiff's favor of $10,000 or more would be proper. The judgment below is approximately one-third of this amount and we believe that it is inadequate. Giving due consideration to defendant's ability to respond, we think that an award of $6,000 would be more appropriate.
For the reasons assigned, the judgment appealed from is amended by increasing the amount thereof to $6,000 and, as thus amended, it is affirmed.
Amended and affirmed.
WESTERFIELD, J., absent.