ELLIS, Judge.
Plaintiff has filed this suit in which he is seeking damages for personal injuries as the result of an alleged aggravated battery committed upon him by the defendant. At the request of plaintiff the case was tried by a jury which rendered a judgment awarding plaintiff damages in the amount of $527.18. From this judgment the defendant has appealed suspensively and the plaintiff devolutively, asking that the award be increased.
On February 2, 1951 the plaintiff and his son-in-law, Nolan Lee, drove to the latter’s place of employment, got his pay check for approximately $85 and then went to the defendant’s place of business known as Paul’s Cafe & Bar at about 10:00 or 10:30 A. M., where they purchased a half pint of whiskey and began to play shuffle board. They bought more whiskey as needed and became very much interested in the game, to such an extent that the loser would have to buy another half pint. They continued to di'ink without eating until approximately 3 :00 or 3 :30 P. M. when they engaged in an argument over the score and virtually agreed to fight it out, whereupon they knocked the table over with the glasses and whiskey bottles, and the son-in-law fell on top ' of plaintiff and they engaged in a fight until a Mrs. Forbes went to the bank and told the defendant what was happening, whereupon he came *610 into the bar, picked the two men up and separated them and told them they would have to leave, and the escorted them out the east door of his place of business.
It is at this point that the testimony is really in conflict as the plaintiff alleges and contends that without any more provocation the defendant struck him with a beer bottle, knocked him down and kicked him, and that when he Started to get up the defendant again knocked1 him down with a beer bottle and again kicked him.
On the other hand, the defendant testifies that when he got the two- men outside the door, an old employee had followed him out and that the plaintiff attempted to strike this old man and then attempted to strike him, whereupon he admits that he struck the plaintiff once with his fist, knocking him down into the gravel and that thereafter he picked him up and washed the blood off his face.
In cases of this kind it is well recognized that one who provokes a difficulty with another cannot recover damages for injuries inflicted upon him even though the conduct of the one who inflicted the injuries was not justified in law. Welch v. Van Valkenburgh, La.App.2d. Cir., 189 So. 297; Oakes v. H. Weil Baking Co., 174 La. 770, 141 So. 456; Lide v. Parker, 6 La.App. 648; Vernon v. Bankston, 28 La.Ann. 710; Johns v. Brinker, 30 La.Ann. 241; Bankston v. Folks, 38 La.Ann. 267; Miller v. Meche, 111 La. 143, 35 So. 491; Massett v. Keff, 116 La. 1107, 41 So. 330; Bonneval v. American Coffee Co., 127 La. 57, 53 So. 426; Fontenelle v. Waguespack, 150 La. 316, 90 So. 662; Finkelstein v. Naihaus, La.App., 151 So. 686; Landry v. Himel, La.App., 176 So. 627; Manuel v. Ardoin, La.App., 16 So.2d 72; Hartfield v. Thomas, La.App., 45 So.2d 216; Smith v. Clemmons, Sheriff, La.App., 48 So.2d 813; Esnault v. Richard, La.App., 53 So.2d 494; Ogden v. Thomas, La.App., 41 So.2d 717; Beaucoudray v. Hirsch, La.App., 49 So.2d 770; Britt v. Merritt, La.App., 45 So.2d 902; Ponthieu v. Coco, La.App., 18 So.2d 351.
The question as to whether the plaintiff provoked the difficulty or was not at fault in provoking it, that is, whether he was the aggressor, can only be answered by a review of 'the facts. There is no question from the facts as revealed by the record in this case but that the plaintiff and his son-in-law were very drunk at the time they engaged in the fight in the barroom, as they had been drinking steadily since arriving. The testimony show that they bought from seven to eight half pints of whiskey and had consumed practically all of it.
The plaintiff and his son-in-law testified that the table top fell away from them and, therefore, the glasses and whiskey bottles would not have been on the floor where they were fighting so as to cut either one. This fact is disputed by the defendant and! several witnesses on behalf of defendant. The plaintiff and his son-in-law also testified that the plaintiff received no scratches or wounds whatsoever as a result of the fight between them in the barroom and that all of the injuries plaintiff received were done to him when plaintiff hit him just outside the barroom door twice with a beer bottle. The plaintiff and his son-in-law nowhere testified that the defendant was rough in his handling of them in the barroom when he escorted them outside nor that he mistreated them in any manner at that time.
In addition to the testimony of plaintiff and his son-in-law as to what happened outside, there is in the record on behalf of the plaintiff the testimony of a father, his son and daughter-in-law, friends of the plaintiff, who testified they drove up to the defendant’s place of business and immediately became aware of the fight and the daughter-in-law insisted upon leaving, however, the two men testified that they saw the defendant strike the plaintiff with a bottle and kick him.
The defendant offered the testimony of nine persons beside himself who' were in the bar or restaurant at the time of the trouble. Their testimony is generally in accord that the plaintiff and his son-in-law were very drunk and engaged in quite a fight on the floor of the saloon, with the son-in-law beating on the plaintiff. Some of the witnesses said that there was blood *611 on the face of the plaintiff before he was lead out by the defendant, while others only knew that there was blood on his face after they saw him outside. It is not disputed that the defendant did not handle these two men ait all rough when he separated them in his bar and told them they had to leave and escorted them out the door. It is the positive testimony of all the witnesses who testified as to what happened outside the door that the plaintiff either struck at an employee • of the defendant and then at the defendant or only at the defendant, who then struck the plaintiff one time, on the right side of his face with his fist, knocking him down into the gravel. There is not a single witness either for the plaintiff or defendant who saw the defendant with any kind of bottle in his hand at the time he separated the two men nor as he went out the door. The plaintiff and his son-in-law saw no bottle, could not testify where the defendant got the bottle with which he is alleged to have struck the plaintiff.
There is a preponderance of testimony, also, that after the defendant wiped the plaintiff’s face off with a wet towel, he and his son-in-law proceeded to his truck where they engaged in another fight, whereupon the defendant, realizing that they were in no condition to drive a truck, went out and took the keys and called the police. At the time that the police arrived the son-in-law was vigorously slapping his father-in-law in the face, however, it is contended that the son-in-law was trying to revive his father-in-law. The police officer told the son-in-law to stop slapping the plaintiff and he continued to do so until the police officer pulled him out of the truck.
The police officer arrested the plaintiff, his son-in-law and the defendant but paroled the latter. As a result there was trial in the City Court and the son-in-law and plaintiff were convicted of disorderly conduct and the defendant was acquitted, however, the defendant, when asked in the City Court if he had hit the plaintiff, answered, “No.” On the trial of the case he readily admitted striking the plaintiff with his fist one time and admitted that he told the City Judge that he did not hit the plaintiff but explained it by saying that the plaintiff contended that he had hit him with a bottle and he was merely denying having hit plaintiff with the bottle. We accept this explanation of his denial in the City Court in view of the fact that he had told the police officer when he came to his place of business in response to his call that he had “lowered the boom” on the plaintiff, which the police officer testified he understood that the defendant meant that he had “punched” the plaintiff. It would be absurd for the defendant to have denied hitting the plaintiff or to have intended to give the Judge the idea that he had not struck him at all in view of the statement that he had made to the police officer.
Counsel for plaintiff particularly attacks the testimony of S. V. Reeves and Carl S. Reeves, two brothers who testified on behalf of the defendant that they saw defendant escort the plaintiff and his son-in-law from the barroom to the outside and saw what happened on the outside. Both of them testified1 positively that the plaintiff “struck at” the defendant and it was then that the defendant struck the plaintiff one time with his fist, knocking him down in the gravel. Both of these witnesses testified that it took place on Saturday, basing this statement upon the fact that they were off from work on Saturday and that they would have been at work if it had happened on Friday. Of course, they were mistaken in their testimony that the trouble took place on Saturday as it was definitely shown that the proper time was Friday. Regardless of this fact, from a reading of their testimony we are satisfied that they were present and saw what they testified to as it would have been impossible for them to have made up or been successfully coached so that they could have testified to so many truthful facts with regard to the trouble. They were given a rigid cross-examination and did not waiver. In the testimony of Carl S. Reeves he frankly admitted that he did not know the date nor the month but thought it happened on Saturday, as that was his “day off”. S. V. Reeves was sure that it *612 happened on Saturday as ordinarily he worked from eight to five on week days and from eight to twelve on Saturday and he did not think he would have been off if it bad happened on Friday. -It would have been impossible for them to have given the testimony they did if it was entirely false or perjured. We are of the opinion that their testimony should be given full weight.
Counsel for plaintiff argues that the other witnesses who were in the barroom and cafe and were produced by the defendant had some kind of interest, however, we are not impressed with this argument in view of their testimony and the interest alleged. For instance, a Mr. and Mrs. Forbes testified on behalf of the defendant and it is shown that they were the owners of the building and were leasing it to the defendant, and at the time of the trouble just happened to be in the defendant’s place of business. There is nothing in their testimony that we could see from reading it that showed that it had been colored in any respect.
The lay testimony in this case convinces us that the plaintiff was the aggressor and that he and his son-in-law provoked the difficulty.
The medical testimony shows that the plaintiff received bruises about the body, on his thighs and back and contusions or brush 'burns about the face and a simple fracture of the right cheek bone with a cut that had to be sutured under the right eye and a cut on the right side of his head. The testimony is clear that all of his wounds could have been caused as a result of the fight between he and his son-in-law in the barroom and in the truck and as a result of being struck by the defendant with his fist just outside the barroom door. We are of the opinion, also, that the testimony of the plaintiff and his son-in-law should be viewed with caution considering their intoxicated condition at the time it happened.
Under the law as cited it is immaterial as to Whether the defendant struck plaintiff with a bottle or with his fist, however, we are convinced from the testimony in the case that the defendant struck the plaintiff only with his fist and only after the plaintiff had struck at him. Counsel for the plaintiff cites the case of Selser v. Revol, 152 La. 447, 93 So. 675, 677, which was a jury trial and in which it was said:
“After assigning these reasons for refusing the new trial, the judge a quo signed the following judgment:
“ ‘Considering the verdict of the jury herein rendered, and the law and the evidence being in favor of the plaintiffs, it is ordered, adjudged, and decreed that there be judgment in favor of plaintiffs, Harry Arthur Selser and Grace Fulton Selser, and against defendants, Gus D. Revol and Ralph Landry, individually and in solido, for the full sum of ($15,000.00) fifteen thousand dollars, together with legal interest from judicial demand1, until paid, and for costs.’
“The trial judge does not take the position that the testimony on behalf of the plaintiffs, if credible, is not sufficient upon which to base a verdict. On the contrary, he admits that it is ample, if true, and that, in his opinion, ‘a new trial would be simply a repetition of the trial’; i. e., would result again in a verdict in favor of plaintiffs. If the testimony adduced by plaintiffs 'be of such a character as to readily convince a second jury, the verdict of the jury in this case cannot be said to be manifestly or clearly erroneous.
“It is the peculiar province of a jury under the law of this state to pass upon the credibility of witnesses. A jury of the vicinage is presumed to know the witnesses, and to' be acquainted with their reputations for truth and veracity in the community in which they live. The jury see the witnesses, hear them testify, and are better ca-pacitated to place a just estimate on their evidence than the judges of the Supreme Court on appeal, and their verdict, for these reasons, should not be lightly considered or hastily disturbed. Lampkins v. Vicksburg, etc., *613 R. Co., 42 La.Ann. [997] 1007, 8 So. 530; Griffin v. [Shreveport & A.] Railroad Co., 41 La.Ann. 808, 6 So. 624.
“On questions of fact involving the credibility of witnesses, the verdict of the jury will not be disturbed unless manifestly erroneous. Moret v. N[ew] O[rleans] R. Co., 112 La. 863, 36 So. 759; Williams v. Louisiana Ry. & Nav. Co., 121 La. 538, [438] 46 So. 528.”
In this case we doubt seriously that these jurors, considering the size of the City of Baton Rouge, knew the plaintiff, defendant or witnesses, or their reputations for truth and veracity. However, in this case we believe the verdict of the jury is manifestly erroneous and the judgment should be reversed and plaintiff’s suit dismissed at his cost and it is so ordered.
On appeal from the Parish of East Baton Rouge.