## WOMACK v. HOTEL FRANCES, Inc., et al.*
### No. 4588.

Court of Appeal of Louisiana. Second
Circuit.

Dec. 1, 1933.

McHenry, Montgomery, Lamkin & Lamkin,
of Monroe, for appellant.

Hudson, Potts & Bernstein, of Monroe, for
appellee.

DREW, Judge.

The appellant, Hotel Frances, Inc., appealed from a judgment rendered by the lower court against it and one McHenry, who was employed by it as a house detective. The judgment was for $500; the amount sued for $2,550. Appellee has answered the appeal, praying that the judgment be increased to $1,500.

Appellant, in its brief, sets out the facts as follows:

"Stripped of unnecessary detail, the assault out of which the suit arose occurred on August 25th, 1932, around 6:30 o'clock in the afternoon. At that time, plaintiff, twenty-one years of age, together with another young man and two young ladies, went to the hotel of defendant without express invitation but, we may say, as a licensee, without objection, for the purpose of listening to music being rendered by an orchestra which was playing in the lobby on the main or ground floor of the building.

"Instead of stopping in the lobby, probably on account of its crowded condition and consequent lack of seating space, and also influenced, perhaps, by the more comfortable and desirable surroundings on the mezzanine floor, plaintiff and his associates went to the latter place, where there were, at that time, or later arrived, some other people, including one Tom Witt.

"On the occasion of the customary inspection by the house detective of the premises of defendant, the said Tom Witt, one Burnside, and two young ladies, were found either dancing or to have been dancing—a thing which was not permitted by the management of the hotel on the carpet or rugs on the mezzanine floor, and a thing which Tom Witt, at least, if not the plaintiff and others had been requested not to do.

"A difficulty, the precise details of which, insofar as the issues herein are concerned, are unnecessary to relate, arose between the aforesaid Tom Witt and defendant's servant over the transgression of the hotel rules concerning dancing on the carpet of the mezzanine floor, and in that difficulty plaintiff became involved, according to his own testimony and that of some of his associates, as peacemaker, and according to the testimony of the house detective, as active participant. Be that as it may, the fracas terminated after McHenry was hit by Witt and his clothes had been considerably torn, some of them off. The dancing had been discontinued.

"McHenry then left the scene and went downstairs and into a check room and, as the Judge of the lower court found, and as is the fact, about ten minutes later returned to the mezzanine floor carrying what is commonly known and referred to as a black jack which was his own personal property, bought and paid for by him and not the property of the hotel. This was, as stated, about ten minutes after the difficulty aforesaid between Tom Witt and the house detective. There was no dancing on the carpets at that time.

"After returning to the mezzanine floor, McHenry struck at one of the men but missed him and then, mistaking a young man named Cox for Burnside, struck him over the head with the black jack. Cox suffered no injury and has filed no suit. McHenry then approached the plaintiff, took him by the arm and invited him to go down in the lobby or to leave the hotel and was escorting him toward a stairway leading to the lobby when plaintiff turned back to get the young lady he had accompanied to the hotel, as he told McHenry he wanted to do before going, and when he turned back to get the young lady,

the house detective struck him on the left side of the head with the black jack, which is shown to have an everted and not an inverted seam, opening a gash that required three stitches to close and which, of course, was accompanied by a certain amount of blood.

"Plaintiff then left the hotel in company with two or three of his acquaintances, got into an automobile and drove to a clinic in the City of Monroe where he was treated and thereafter, although told by his physician to go home, drove around town, according to his own testimony, for forty-five minutes or an hour with the young people he had accompanied to the hotel and then went home.

"He went to work the next day at the Ouachita National Bank, where he was employed as a runner and to perform other duties, but, according to his statement, was required to go back to his home and, on instructions from his physician, stayed there some three days in bed, although, according to the testimony of his physician, he was at the physician's office each day to have his wound dressed until it was well. There was no fracture, as is shown by the testimony of the physician and irrespective of the statement made by counsel for plaintiff in his brief to the lower court."

This is the most favorable construction that could be placed on all the facts as to the appellant.

The questions raised here are:

(1) What, if any, duty did the defendant company owe the plaintiff under the circumstances?

(2) Was the tort committed within the scope of the employment of Mr. McHenry?

Appellant was bound not to injure appellee by its active negligence. He had the tacit and implied permission to come to the hotel and occupy the mezzanine floor for the purpose of listening to the music, and, if he was injured willfully or wrongfully or by active negligence of an employee of the hotel acting within the scope of his employment, the hotel company is liable.

This set of young people had on numerous occasions visited the hotel, occupying the mezzanine floor during these concerts, and had been guilty of dancing there contrary to the rules of the hotel. They had been stopped and warned on several previous occasions by the house detective, McHenry, and, on this night, he had had a difficulty with one of the crowd. While the record discloses that appellee was not dancing on this particular night, his lady companion had been. McHenry had had positive instructions from the manager of the hotel to prevent dancing on the mezzanine floor. He decided the only way to do it was to eject or remove the crowd of young people from that floor.

This was the manner he adopted of carrying out his instructions, and he had authority under his instructions to do so. While performing this duty he used unnecessary force and uncalled for force, due no doubt to the fact that he was angry because of his affray with one Witt, who apparently had gotten the better of him.

McHenry was acting within the scope of his employment in removing appellee from the mezzanine floor, and, in doing so, he injured him unnecessarily and in a willful and wanton manner, and his employer, the hotel company, is liable for the damage inflicted on appellee by its agent.

The only remaining question is the quantum of damage. The assault was in a public place in the presence of a number of appellee's friends and acquaintances, as well as strangers. He was greatly embarrassed and humiliated. He paid $50 for doctor's services required in suturing the scalp and treating it afterwards. He suffered considerable pain and headaches, was confined to his bed for several days, and the shock he received was great.

We think the award of the lower court does not do justice and that it should be increased to the sum of $1,000.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court as to the appellant herein be increased to the sum of $1,000, and, as so amended, the judgment is affirmed with costs.