## NEWMAN v. SOUTHERN KRAFT CORPORATION.

### No. 6164.

Court of Appeal of Louisiana. Second Circuit.

May 3, 1940.

Rehearing Denied June 10, 1940.

198

Thompson & Thompson, of Monroe, for plaintiff-appellant.

Madison, Madison & Files, of Bastrop, for defendant-appellant.

HAMITER, Judge.

A number of blows from a black jack were dealt plaintiff, Robert P. Newman, by Joe McMurtrey, a watchman engaged in the performance of his employment for the Southern Kraft Corporation, and he sues that organization to recover damages claimed to have resulted from the alleged "malicious, premeditated and unjustified attack" made upon him. The affair took place on the paper mill premises of defendant in Bastrop, Louisiana, during the morning of September 26, 1939. Among the elements of damage listed in the petition are physical injury, humiliation, pain and suffering.

Defendant denies any liability to plaintiff. It seeks to justify the actions of the watchman on the grounds that, (1) the difficulty was brought on and precipitated by certain acts of plaintiff, and (2) the latter was a trespasser and the employee rightfully acted in defense and for the protection of the company property.

The case was tried on the issues formed by the petition and answer and defendant was condemned to pay to plaintiff the sum of $1,500. Approximately a month after the rendition of judgment the trial judge granted a rehearing, and on reconsideration reduced the award to $500.

Both litigants appealed.

Defendant insists in this court that plaintiff's demands should be rejected in toto; or, in the alternative, that an award of $50 would be ample. The complaint of plaintiff is that the damages allowed are inadequate and should be increased to $2,000.

Defendant's Bastrop paper mill, according to the record, reopened during the latter part of the summer of 1939 after a shutdown of approximately a year. On the morning of September 26, 1939, which was a few days after the resumption of operations, numerous persons, including plaintiff, gathered on the sidewalks surrounding the establishment for the purpose of seeking employment. Previous to that date, on several occasions, plaintiff had conferred with Deaver G. Campbell, the mill superintendent, with reference to obtaining work. He was a former employee, with whom no difficulties had been experienced. During those conferences Mr. Campbell promised that a job would be given to him if at all possible; and in this regard he was granted permission, to the knowledge of the watchman, McMurtrey, to make one trip into the mill and talk with a Mr. Storey.

About 8:30 o'clock of the mentioned morning Superintendent Campbell arrived at defendant's plant in his car and stopped it on the driveway. Immediately after alighting therefrom he engaged in conversation with a Mr. Dopson, a policeman of the Town of Bastrop, who was standing there. As plaintiff walked along a path on the company property in the direction of the superintendent, with the view and purpose of further discussing the contemplated work, the watchman, McMurtrey, who was standing nearby, began walking, blew a whistle several times, and motioned to him to leave the premises. The two, plaintiff and the watchman, proceeded toward each other and met at a point ten or twelve feet from the superintendent. There they conversed briefly, after which the difficulty occurred.

In describing the incident, plaintiff states that Joe McMurtrey "came up and told me that I couldn't wait there, that I would have to move, and I says, 'Mr. Joe, I have an appointment with Mr. Deaver (the superintendent) to see him, and in just a minute or two I will get out'. And Mr. Deaver was standing in talking distance of me at that time. Mr. Joe McMurtrey started shoving me, and I says, 'I will get out', and he turned me almost around back towards the street. And when he did he struck me on this side of the head. That kinda staggered me and I turned around, and I threw my right arm up to keep him from hitting me in the face, and he struck me several times on my arms and shoulder. I didn't make any resistance towards him and came on back to the street."

The version related by the watchman is: "I seen Mr. Newman coming down the street, and he come off it and down the walk on towards Mr. Campbell's office. I whistles and he didn't stop. I whistles a couple of times and I told him I couldn't let him go in there. It was strictly against the rules. He said 'To hell with you', and hit at me. He hit me on the shoulder and I hit him with the blackjack." The blow delivered by the plaintiff, says the watchman, was just a backhand lick. It did not reach his face because he dodged.

The record contains the testimony of a number of other witnesses who were standing a short distance from the participants. Not one of them heard the conversation that took place between the parties; therefore, the statement that plaintiff used abusive words stands uncorroborated. On the question of whether or not the watchman was struck before he commenced hitting plaintiff, the testimony is not uniform. However, a preponderance of it, we think, favors the negative view. The movement of plaintiff's hands, concerning which two defense witnesses testified, undoubtedly occurred when the blows from the blackjack commenced and had for its purpose the prevention of injury.

 The evidence is convincing, and it is our finding and holding, that plaintiff was not an aggressor, such as would bar his recovery of damages. It is evident that the trial judge entertained this view, for in his reasons for judgment he stated: "The Court is impressed with the fact, and it is the opinion of this Court, that

what really provoked this difficulty was not any fear on the part of the watchman but, to use the term, that his vanity had been hurt and that he resorted to this force in the presence of the various other people to stop this plaintiff as he continued on the way towards the superintendent after he had whistled at him to stop. In other words, that he used the blackjack to enforce his order to the plaintiff.".

The cases of Lide v. Parker, 6 La.App. 648, and Welch v. Van Valkenburgh, La. App., 189 So. 297, cited and relied on by defendant, are not applicable. The assaulted persons therein, by their actions, provoked or precipitated the difficulties involved.

A lawful owner or occupant of property may use such force, and only that, as may be reasonably necessary to prevent an unlawful entry thereon or to remove trespassers or intruders therefrom. 6 Corpus Juris Secundum, verbo Assault and Battery, § 20. Assuming that Newman was a trespasser on the premises of defendant, the watchman, in our opinion, was without right or authority to resort to the means and methods that he employed. The force used was excessive and unnecessary under the circumstances. Newman was unarmed; he made no threats of violence and offered no resistance to the contemplated removal of him; and it was apparent that he was on a peaceful mission, that of seeking employment. His ejection from the premises could have been accomplished in a manner less severe than that used. Incidentally, an officer of the law stood not more than fifteen feet away.

The case is distinguishable from Applewhite v. New Orleans Great Northern R. Co., La.App., 148 So. 261, which defendant calls to our attention. The injured plaintiff in that litigation was shot, as the court found, while engaged in the commission of a felony—attempting to rob a railroad box car. The force used by the guardian of the property was reasonable under the circumstances that prevailed.

A short while after undergoing the assault, plaintiff walked to the office of a physician for medical attention. An examination performed there disclosed a knot and bruise on the head, and bruises on the arms and shoulders. Discoloration attended the bruised places. There was no injury to the skull. He was rational but complained of pain, headache

and suffering. Temperature ranging around 100 and 101 endured for four or five days thereafter. On five different occasions, during a period of ten days, he was observed and treated by the physician.

For the mentioned injuries, pain and suffering, and for the humiliation and embarrassment suffered by reason of the assault's occurrence in the presence of 30 or more other employment seekers, we think that an award in damages to plaintiff of $1,000 would be proper. In Womeck v. Hotel Frances, Inc., et al., La.App., 151 So. 128, this court allowed that amount for damages of a similar nature.

Accordingly, the judgment is amended by increasing the award in plaintiff's favor to $1,000, and as thus amended, it is affirmed. Costs of appeal shall be paid by defendant.